UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:
TIM MICHAEL YABLONOWSKI

RICHARD B. PFEIL,

    Appellant,

v.                                               Case No.:  2:22-cv-242-SPC

TIMOTHY MICHAEL
YABLONOWSKI,

    Appellee.
_____/

### OPINION AND ORDER[1]

    Appellant/Creditor, Richard Pfeil, appeals the bankruptcy court's order excluding opinion testimony and granting the Appellee/Debtor's motion for summary judgment (Doc. 2-22).  (Doc. 1).   The parties have fully briefed the Court and the appeal is ripe for the Court's review.  For the following reasons, the decision of the bankruptcy court is AFFIRMED.

---

[1] Disclaimer: Papers hyperlinked to CM/ECF may be subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or their services or products, nor does it have any agreements with them.  The Court is not responsible for a hyperlink's functionality, and a failed hyperlink does not affect this Order.

## BACKGROUND

Appellee/Debtor, Timothy Yablonowski, was the president, founder, and major shareholder of Ultrawatt Energy Systems, Inc. ("Ultrawatt"), which was formed "to develop and sell 'energy-efficient building technologies.'" (Doc. 2-22 at 3). For a total investment of $1.7 million, Pfeil[2] purchased stock in Ultrawatt four times over three years.

But several years later, Pfeil sued Yablonowski and Ultrawatt in state court for fraudulent and deceptive trade practices, and he accused Yablonowski of using Ultrawatt to "raise millions of dollars from third-party investors, all under the guise of false representations regarding the financial viability of the company." (Doc. 2-22 at 4). The state court entered a stipulated final judgment of $3,638,709.93 against Yablonowski.

Yablonowski petitioned for Chapter 7 Bankruptcy, and Pfeil filed a complaint to determine whether his state court judgment was dischargeable under the United States Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A).[3] Pfeil based his argument on what he argued were two intentionally false statements of material fact meant to induce his investment in Ultrawatt: (1) that Pfeil would purchase and receive stock in Ultrawatt directly; and (2) that

---

[2] Plaintiffs below were Richard B. Pfeil; Richard B. Pfeil as Trustee of the Richard B. Pfeil Revocable Trust; and David R. Brach as Trustee of the M.J. Pfeil Special Trust No. 2. The Court will refer to Plaintiffs collectively as "Pfeil."
[3] Unless otherwise indicated, statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, et seq.

Ultrawatt's technology was revolutionary, patented, and bound to yield a multimillion dollar profit. (Doc. 2-22 at 5). But Pfeil contended these statements were false because Yablonowski sold Pfeil his own Ultrawatt stock, rather than stock held by Ultrawatt, and because Ultrawatt's technology did not work. (Doc. 2-22 at 5). In support, Pfeil offered the bankruptcy court a "Report to the Special Litigation Committee of Ultrawatt Energy Systems, Inc." by an attorney at the Quarles & Brady law firm, and four documents from the state court case: its complaint, a receiver's report, the stipulation for judgment, and the judgment.

The parties filed dueling motions for summary judgment, and Yablonowski moved to exclude portions of testimony by Mr. Gerald McHale, Ultrawatt's state-court-appointed receiver. The bankruptcy court denied Pfeil's motion for summary judgment, and granted both Yablonowski's evidentiary motion and his motion for summary judgment. (Doc. 2-22). Pfeil appealed, which leads us here.

## STANDARD OF REVIEW

"Like a district court, a bankruptcy court may only grant summary judgment where there is no genuine issue of material fact." *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001). This Court reviews the bankruptcy court's grant of summary judgment de novo. *Id.*

3

Regarding the bankruptcy court's evidentiary rulings, this Court reviews them for abuse of discretion. *United States v. Kennard*, 472 F.3d 851, 854 (11th Cir. 2006). "The application of an abuse-of-discretion review recognizes the range of possible conclusions the trial judge may reach." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004).

## DISCUSSION

### I. The Bankruptcy Court's Evidentiary Order is Affirmed.

McHale is a certified public accountant and forensic fraud examiner whom the state court appointed as Ultrawatt's receiver to review the company's books, records, and technology. Based on this review, McHale opined Ultrawatt's technology was at best, neither state-of-the art nor unique, and was at worst, nonexistent. (Doc. 6 at 25–26). Further, the technology's failure in the marketplace and cancellation of contracts illustrated its failure. (Doc. 6 at 25–26). But the bankruptcy court excluded this portion of McHale's testimony concluding that an opinion on the functionality of Ultrawatt's technology would require a basis in specialized or technical knowledge, and that the record did not establish McHale possessed the knowledge, skill, experience, training, or education required by Federal Rule of Evidence 702[4] to offer such an expert opinion. (Doc. 2-22 at 9).

---

[4] "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

4

Pfeil argues the bankruptcy court erred in this determination and should have admitted this portion of McHale's testimony as a lay opinion based on his personal observations. (Doc. 6 at 23). He notes that the reliability of the excluded testimony "is bolstered by its consistency with the Quarles & Brady Report, which found that 'the product worked but was not efficient.'" (Doc. 10 at 11–12.) Pfeil argues, in the alternative, that the testimony qualified as expert opinion based on McHale's "extensive experience and personal review" of the technology. (Doc. 6 at 30).

Yablonowski responds the bankruptcy court was correct in concluding McHale lacks the specialized or technical knowledge necessary to opine on the functionality of Ultrawatt's technology and notes that—despite several years' involvement in this litigation—McHale had two prior opportunities to render this opinion but did not do so until the November 2020 affidavit that was the subject of the motion.

A trial court's decision to exclude expert witness affidavit testimony must be manifestly incorrect and substantially prejudicial to warrant reversal. *See Frazier*, 387 F.3d at 1258–59 (collecting cases); *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002) (citations omitted). With the

---

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case."

record before it, the bankruptcy court concluded the challenged portion of McHale's opinion testimony offered technical knowledge that McHale did not have the experience or knowledge to offer. For several reasons, the Court sees no error in this exclusion, much less manifest error.

First, although McHale was qualified to offer expert opinions on other matters, the bankruptcy court was justified in excluding opinions about matters "outside of—but related to—his expertise." *See Kipperman v. Onex Corp.*, 411 B.R. 805, 843 (N.D. Ga. 2009) (collecting cases). Second, as Pfeil suggests in his briefing, McHale's testimony was consistent with the Quarles & Brady report, which the bankruptcy court did consider. Because McHale's opinion provided no more than what the evidence established or what the parties argued, it is unclear that the testimony would have assisted the trier of fact. *See id.* at 844. Finally, Pfeil has not established he was substantially prejudiced by the exclusion, which he must to justify reversal. *See Frazier*, 382 F.3d 1258–59. The bankruptcy court's decision to exclude this affidavit testimony is affirmed.

6

## II. The Bankruptcy Court's Summary Judgment Order is Affirmed.

A debt[5] is nondischargeable under § 523(a)(2)(A) if it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." Consistent with the traditional elements of common law fraud, "[a] creditor must prove that: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998). A creditor must establish these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991). Only the first and third elements are disputed in this appeal.

### A. Specific False Representations

Pfeil argues the bankruptcy court's conclusions about three claimed misrepresentations were erroneous. First, Pfeil argues Yablonowski misrepresented the origin of the Ultrawatt stock Pfeil purchased. He contends Yablonowski "led [him] to believe [he] was purchasing shares in the company, as opposed to [Yablonowski's] shares." (Doc. 6 at 11). But to establish fraud regarding this claim, Pfeil must show by a preponderance of the evidence that

---

[5] "[A] money judgment entered by a court of competent jurisdiction" qualifies as a "debt." *See In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998).

7

Yablonowski made a false representation about the stock's origin. *See Grogan,* 498 U.S. at 287; *In re Bilzerian,* 153 F.3d at 1281.

As the bankruptcy court noted in its opinion, Pfeil's October 2021 affidavit supporting his motion for summary judgment below states, "it was represented to [Pfeil] that [he] would purchase shares of stock directly from Ultrawatt." (Doc. 2-15 at 5). Pfeil communicated this statement in passive voice ("it was represented to me . . ."), but in his preceding several statements, Pfeil states, "Tim Yablonowski made false representations . . . ." (Doc. 2-15 at 4). Pfeil's argument relies on evidence about Yablonowski's practices surrounding stock sales, but he does not offer evidence about the statements Yablonowski made *to* Pfeil about *his* stock purchases. The Court finds no error here.

Second, Pfeil argues Yablonowski misrepresented Ultrawatt's solvency. He contends that Yablonowski represented to him that Ultrawatt was solvent, doing great, on fire, and on the edge of success; but that the evidence shows only two customers ever bought Ultrawatt's technology and the company was not solvent between 1995 and 2004.

The bankruptcy court dispensed with this argument with the plain language of § 523(a)(2)(A), from which "a statement respecting the debtor's or an insider's financial condition" is explicitly excluded. (Doc. 2-22 at 18). The bankruptcy court acknowledged that if this type of statement is in writing, it

8

is excepted from discharge under § 523(a)(2)(B)[6], but it noted that Pfeil attested he had received no written financial information for Ultrawatt. The Court finds no error here.

Finally, Pfeil argues Yablonowski misrepresented Ultrawatt's technology. He contends that Yablonowski represented to him that Ultrawatt's technology was not only functional but great, but that the Quarles & Brady Report characterized the technology as "not efficient."

The bankruptcy court stated, as a general principle, that Pfeil's statements about Yablonowski's alleged misrepresentations about Ultrawatt's technology lacked the specificity needed to establish fraud. (Doc. 2-22 at 13.) Then the bankruptcy court added that even if Pfeil had proven Yablonowski made those specific representations, he had failed to prove those representations were false. (Doc. 2-22 at 13.) In particular, the court noted that Pfeil had not proven that Ultrawatt's technology was unpatented or that there were not large companies interested in purchasing the technology—and as support, the bankruptcy court cited the Quarles & Brady Report, on which Pfeil relied and relies. (Doc. 2-22 at 13–16).

---

[6] Section 523(a)(2)(B) deems nondischargeable any debt obtained by "use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive."

9

The bankruptcy court's conclusion that Pfeil failed to establish a fraudulent misrepresentation by Yablonowski for purposes of § 523(a)(2)(A) is affirmed.

### B. Justifiable Reliance

For reliance to be justified, "[t]he plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility." *In re Vann*, 67 F.3d 277, 283 (11th Cir.1995) (quotation omitted). So rather than comparing a plaintiff's conduct to that of a "reasonable man," it is measured against "an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *Id.* (quotation omitted). Simply put, courts undertake a subjective analysis to determine whether a creditor's reliance was justified. *In re Denise Roberts-Dude*, 597 F. App'x 615, 617 (11th Cir. 2015).

Pfeil states the record evidence shows Pfeil invested in Ultrawatt based solely on Yablonowski's representations. And he faults the bankruptcy court

for concluding that, given Pfeil's background,[7] he could and should have investigated Ultrawatt before investing.

But that is precisely what the bankruptcy court would be expected to do. The justifiable reliance analysis does not measure a plaintiff's conduct against a reasonable person standard, but instead accounts for the plaintiff's own capacity and knowledge. *In re Vann*, 67 F.3d at 283. Pfeil made several requests for financial information, disclosure documents, and opportunities to examine the books; Yablonowski repeatedly denied those requests. (Doc. 2-16 at 16; Doc. 2-17 at 30–36). Despite being repeatedly rebuffed, Pfeil invested $1.7 million in Ultrawatt four times over three years.

It was not error for the bankruptcy court to conclude that under these circumstances, a person with Pfeil's knowledge and experience was not justified in relying solely on Yablonowski's representations in investing $1.7 million in Ultrawatt. Pfeil failed to meet his burden of establishing the state court judgment is dischargeable under § 523(a)(2)(A), and the bankruptcy court's decision is affirmed.

Accordingly, it is now

**ORDERED:**

---

[7] Pfeil has a bachelor's degree in finance, worked for three decades as a futures trader with the Chicago Board of Trade, and is an experienced investor. (Doc. 2-22 at 25–26; Doc. 6 at 17).

11

The bankruptcy court's order is **AFFIRMED**. The Clerk is directed to enter judgment accordingly, transmit a copy of this Opinion and Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on December 7, 2022.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
Honorable Caryl E. Delano
All Parties of Record